## Transamerican Freight Lines, Incorporated v. Fenton

*John M. Kuchka*, of *Kuchka & Irey*, for plaintiff. *Gailey C. Keller*, of *Smith, Eves, Keller & Harding*, and *David C. Dickson*, for defendants.

*Jack C. Younkin*, of *Leavens, Younkin &
Roberts*, for additional defendant.

MYERS, *P.J.*, January 9, 1979—Transamerican
Freight Lines, Inc., plaintiff herein, filed a com-
plaint in trespass alleging that defendants negli-
gently permitted a fire to occur while defendants
were engaged in repairing plaintiff's truck trailer.
Defendant, Allen W. Dreisbach, subsequently filed
a complaint joining Buckhorn Fire Co. No. 1 as an
additional defendant.

Dreisbach's complaint alleged that additional de-
fendant, fire company, was negligent in the man-
ner in which it extinguished the fire. Additional
defendant then filed preliminary objections in the
nature of a demurrer to defendant Dreisbach's
complaint. The demurrer is now before the court for
disposition.

Prior to 1973, a volunteer fire company could
claim governmental immunity as a shield to tort
liability for acts committed while the fire company
and its members were engaged in the prevention,
control, and extinguishing of fires: Radobersky v.
Imperial Vol. Fire Dept., 368 Pa. 235, 81 A. 2d 865
(1951). Subsequently, however, governmental
immunity was abolished in Ayala v. Philadelphia
Bd. of Education, 453 Pa. 584, 305 A. 2d 877
(1973).

There are, nonetheless, compelling reasons why
a volunteer fire company should not be held liable
for tortious acts committed while its members are
fighting a fire.

In Ayala, the Supreme Court reviewed the tradi-
tional justifications for the governmental immu-
nity doctrine. The Supreme Court then concluded
that the traditional justifications were no longer

applicable to modern municipal corporations, and that the immunity doctrine was an anachronism which had persisted merely by the force of inertia.

However, in our opinion, several of the traditional reasons for the immunity doctrine do still apply, with significant force, to the unique situation of volunteer fire departments.

Initially, immunity was afforded to governmental units in part because they supposedly lacked the funds with which to pay damage claims: Russell v. Men of Devon, 2 T.R. 667, 100 Eng. Rep. 359 (1788). As the Supreme Court noted in Ayala, however, modern municipalities now have corporate funds which can be enlarged by taxation.

Volunteer fire companies, in contrast, have no taxing powers. They derive their funds from charitable contributions or, in some areas, from allocations by the municipalities in which they are located. Hence, volunteer fire companies—unlike municipalities—still have no fund from which they can pay damage claims.

Moreover, volunteer fire companies have no mechanism for spreading the cost of a damage claim, or even of diffusing the cost of insurance premiums. In short, there are no "customers" to whom such costs can be transmitted, nor are there any taxing powers.

In addition, one of the early justifications for governmental immunity was the fear that governmental units would cease to function if they were compelled to pay large damage claims. In Ayala, the Supreme Court noted that the prospect of municipal insolvency is no longer a threat, since modern municipalities possess taxing powers and carry liability insurance policies.

However, many volunteer fire companies might

well be dismantled if such liability were imposed upon them. Even if insurance were available, we question how many individuals would be willing to serve as volunteer firemen knowing that they might be held individually liable on a damage claim.

In our view, then, two of the initial justifications for the governmental immunity doctrine: (1) lack of taxing authority and; (2) curtailment of governmental functions, still argue forcefully that the unique situation of volunteer fire companies requires that they be granted immunity when engaged in fighting fires.

Furthermore, we are disturbed by the theory that a volunteer fire company and its members owe a duty to fight a fire in accordance with certain standards of care. We have difficulty in ascertaining how such a duty arises, and defendant Dreisbach has furnished us with no authority supporting this position which he advances.

Let us suppose that all of the members of the Buckhorn Fire Co. had ignored the alarm and simply stayed home. Would defendant Dreisbach thereupon argue that the volunteers were negligent because they did not turn out for the fire?

Suppose, furthermore, that the members of a volunteer company happened to be poorly-equipped and untrained, because their company received little financial support. Would the volunteers be responsible for this situation, and for any damaging acts which arose from it?

In our view, if there is any duty to provide competent fire protection services, that obligation rests squarely with the local municipalities, and not with the fire companies or their volunteers. As the Supreme Court observed in Ayala, modern local

municipalities—unlike volunteer fire companies—have the taxing authority which enables them to respond to public needs.

Significantly, the Vehicle Code imposes liability on municipalities, not volunteer fire companies, for the negligent operation of vehicles by volunteer fire fighters: Vehicle Code of June 17, 1976, P.L. 162, 75 Pa.C.S.A. §1576. The statute thus clearly recognizes that a political subdivision is in a better position to spread the risk-bearing costs of tort liability than a volunteer company that bottoms its existence on voluntary contributions. The same policy considerations dictate that liability for acts incurred in actually fighting a fire be similarly imposed on municipalities. We believe that it would be a tragic policy error to place tort liability on the dedicated individuals who voluntarily fight fires without any monetary compensation and often at great personal sacrifice.

There is one final caveat. Since the issue before us is a demurrer, we must assume for these purposes that the well-pleaded facts stated in the complaint of defendant Dreisbach are true, i.e., that the Buckhorn Fire Company was negligent.

However, under these circumstances we need not, and do not, pass upon the merits of this allegation.

## ORDER

And now, January 9, 1979, the preliminary objections in the nature of a demurrer filed by the additional defendant, Buckhorn Fire Company No. 1, are sustained, and the case dismissed as to said additional defendant, Buckhorn Fire Company No. 1.